UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DAVID FERNANDEZ, ET. AL.<br>　　　Plaintiffs,<br><br>　　v.<br><br>ZURICH AMERICAN INSURANCE COMPANY,<br>　　　Defendant. | No. 3:15-cv-00228 (MPS) |

**Ruling on Summary Judgment Motions**

**I.　　Introduction**

　　Plaintiffs David Fernandez and O.E.M. America of Connecticut, Inc., d/b/a O.E.M. America ("OEM"), have sued Zurich American Insurance Company ("Zurich"), alleging that it breached a duty to defend Plaintiffs under an insurance policy in a lawsuit brought against them. Zurich contends that it had no duty to defend Plaintiffs because the lawsuit's allegations fall outside the policy's coverage. Plaintiffs and Zurich have filed cross-motions for summary judgment. These motions are granted in part and denied in part. For the reasons set forth below, I find that (i) Zurich has a duty to defend Plaintiffs in the underlying lawsuit because the lawsuit's allegations "possibly" fall within the coverage of the policy, (ii) Zurich breached its duty to defend Plaintiffs and the Court will determine damages in a future proceeding, and (iii) Zurich is entitled to summary judgment on Plaintiffs' breach of the covenant of good faith and fair dealing claims because Plaintiffs have not opposed Zurich's motion for summary judgment on those claims.

**II.　　Facts**

　　The following facts are taken from the parties' Local Rule 56(a) Statements and the attached exhibits. *See* Defendant's Local Rule 56(a)(1) Statement, ECF No. 50; Plaintiffs' Local

1

Rule 56(a)(2) Statement, ECF No. 57-1; Plaintiffs' Local Rule 56(a)(1) Statement, ECF No. 52-2; Defendant's Local Rule 56(a)(2) Statement, ECF No. 58-1.

### A. The Underlying Action

The underlying lawsuit was brought against Plaintiffs in this Court by Roth Staffing Companies L.P. ("Roth"), and involved allegations that a Roth employee had left to work for a company affiliated with Plaintiffs in violation of his agreement with Roth. *See Roth Staffing v. Brown*, Docket No. 13-cv-216 (D. Conn.)(JBA).

Roth provides staffing, recruiting, and administrative services to companies in Connecticut and nationwide. (Plaintiff's Local Rule Statement ("Pl.'s L.R. 56(a)(1) Stmt."), ECF No. 52-2 at ¶ 10; Defendant's Local Rule 56(a)(2) Statement ("Def.'s L.R. 56(a)(2) Stmt."), ECF No. 58-1 at ¶ 10.) Roth employed Thomas Brown in its Hartford, Connecticut office between September 2006 and September 2007, and later between June 2010 and September 2012. (Def.'s L.R. 56(a)(1) Stmt., ECF No. 50 at ¶¶ 11-12, Pl.'s L.R. 56(a)(2) Stmt., ECF No. 57-1 at ¶¶ 11-12.) When Brown rejoined Roth in June 2010, he executed an employment agreement (the "Employment Agreement"). (Def.'s L.R. 56(a)(1) Stmt., ECF No. 50 at ¶¶ 12-13, Pl.'s L.R. 56(a)(2) Stmt., ECF No. 57-1 at ¶¶ 12-13.) The Employment Agreement contained restrictive covenants, including non-competition, confidentiality, and non-solicitation clauses. (Def.'s L.R. 56(a)(1) Stmt., ECF No. 50 at ¶¶ 11-12, Pl.'s L.R. 56(a)(2) Stmt., ECF No. 57-1 at ¶¶ 11-12.) After Brown left Roth, he joined OEM ProStaffing, Inc. ("ProStaffing"). (Def.'s L.R. 56(a)(1) Stmt., ECF No. 50 at ¶ 18, Pl.'s L.R. 56(a)(2) Stmt., ECF No. 57-1 at ¶ 18.) ProStaffing also provides staffing services in the Hartford area. (Def.'s L.R. 56(a)(1) Stmt., ECF No. 50 at ¶ 25, Pl.'s L.R. 56(a)(2) Stmt., ECF No. 57-1 at ¶ 25.)

On February 25, 2013, Roth sued Brown and ProStaffing in this Court (the "Underlying Action"). (Def.'s L.R. 56(a)(1) Stmt., ECF No. 50 at ¶ 1, Pl.'s L.R. 56(a)(2) Stmt., ECF No. 57-1 at ¶ 1.) Roth amended its complaint twice, adding OEM as a defendant after the first amendment and Fernandez as a defendant after the second amendment. (Def.'s L.R. 56(a)(1) Stmt., ECF No. 50 at ¶¶ 5-6, Pl.'s L.R. 56(a)(2) Stmt., ECF No. 57-1 at ¶¶ 5-6.) Roth alleged, inter alia, that Brown had breached the Employment Agreement and that ProStaffing had tortiously interfered with the Employment Agreement. (ECF No. 50-3 at ¶¶ 45-57.) Roth's second amended complaint (the "Second Amended Complaint") sought to pierce ProStaffing's corporate veil to render Fernandez and OEM liable for ProStaffing's conduct. (Def.'s L.R. 56(a)(1) Stmt., ECF No. 50 at ¶¶ 5, 7, Pl.'s L.R. 56(a)(2) Stmt., ECF No. 57-1 at ¶¶ 5, 7.)

The Second Amended Complaint includes the following allegations:

In or around January 2013, Roth Staffing learned that Brown, working on behalf of…ProStaffing, was soliciting business from Lincoln Waste Management, a Roth Staffing customer whom he had serviced during his employment by Roth Staffing. Roth Staffing also learned that Brown, working on behalf of…ProStaffing, had successfully placed at least one temporary employee with Lincoln Waste Management, and that he was attempting to place other candidates with that customer.

Additionally, Brown has placed postings on job search websites on behalf of…ProStaffing. The job postings advertise manufacturing and production positions, and customer service positions, which Brown is seeking to fill for customers in the Hartford area. The postings list Brown as the contact person for…ProStaffing…The recruitment and placement of manufacturing and production professionals, and customer service representatives, are services which directly compete with Roth Staffing's Ultimate Staffing line of business. Indeed, Brown performed those same services for Roth Staffing during 2012 and earlier.

One of [Brown's] job postings describes…ProStaffing as follows:…ProStaffing is dedicated to the recruitment and placement [sic] of manufacturing and production professionals. With decades of experience we work with the most respected clients in the Hartford market place and place top talent with them.

(ECF No. 50-3 at ¶¶ 35-37.)

3

After cross-motions for summary judgment, the court in the Underlying Action concluded that the Employment Agreement's restrictive covenants were enforceable and that Brown had breached those covenants. (Def.'s L.R. 56(a)(1) Stmt., ECF No. 50 at ¶ 36, Pl.'s L.R. 56(a)(2) Stmt., ECF No. 57-1 at ¶ 36.)  The court granted Roth's motion for partial summary judgment and denied the motions by OEM and Fernandez.  On February 16, 2016, the parties reported that the case had settled, and the court issued an order of dismissal. (Def.'s L.R. 56(a)(1) Stmt., ECF No. 50 at ¶ 37, Pl.'s L.R. 56(a)(2) Stmt., ECF No. 57-1 at ¶ 37.)

### B. The Zurich Policy

Zurich issued a "Staffing Industry Professional Liability" insurance policy to OEM for the period between February 28, 2012, and February 28, 2013 (the "Zurich Policy"). (Def.'s L.R. 56(a)(1) Stmt., ECF No. 50 at ¶ 38, Pl.'s L.R. 56(a)(2) Stmt., ECF No. 57-1 at ¶ 38.)  The Zurich Policy provides:

> **Section I – INSURING AGREEMENTS**
>
> **A. Coverage**
>
>  1. We will pay those sums that the insured becomes obligated to pay as "damages" because of any "claim" arising from a "wrongful act" to which this insurance applies. The "wrongful act" must take place:
>
>> a. During the policy period; and
>>
>> b. In the "coverage territory".
>
> **B. Defense and Investigation**
>
> We shall have the right and duty to defend the insured against any "claim" based on a "wrongful act" seeking "damages" to which this insurance applies, even if any of the allegations of the "claim" are groundless, false or fraudulent.
>
> We shall have the right to select defense counsel for the investigation, defense or settlement of the "claim" and we shall pay all reasonable "claim expenses" arising from the "claim."

(ECF No. 50-8 at 3.)  The Zurich Policy defines a "claim" as:

> 1.  Written demand for money resulting from a "wrongful act"; or
>
> 2.  "Suit" resulting from a "wrongful act".

(*Id*. at 11.)  The Zurich Policy defines a "Wrongful Act" as:

> Any actual or alleged act, error or omission, misstatement, or misleading statement in the course of providing "staffing services" to your clients by you or by any person for whose acts you are legally responsible.

(*Id*. at 13.)  The Zurich Policy defines "Staffing Services" as:

> Services provided by a staffing company to their clients including but not limited to:
>
> 1. Staffing related administrative services provided by an Administrative Services Organization (ASO);
>
> 2. "PEO Service";
>
> 3. Staffing related services provided to your clients for the recruitment, selection, and placement of a person for employment with a client;
>
> 4. Temporary, contingent or contract placement services;
>
> 5. Vendor Management Service (VMS), means the facilitation, purchase and management of "staffing services" for clients including the placement and fulfillment of orders for "staffing services workers";
>
> 6. Services performed on behalf of your client by a "staffing services worker" who is not a direct hire or permanent placement; and
>
> 7. Services performed for a client company to supply that client company with a "staffing services worker."

(*Id*. at 12.)

### C.  Zurich's Denial of Coverage

On January 15, 2014, Cathie Brady, Risk Manager for ProStaffing, advised Zurich that Roth had named OEM as a defendant in the Underlying Action.  (Pl.'s L.R. 56(a)(1) Stmt., ECF No. 52-2 at ¶ 14, Def.'s L.R. 56(a)(2) Stmt., ECF No. 58-1 at ¶ 14.)  On February 27, 2014,

Zurich informed Brady that the Zurich Policy would not cover the claim against OEM on the grounds that the Second Amended Complaint did not allege a "wrongful act" within the meaning of the Zurich Policy:

> [T]he Claimant alleges that the Insureds illicitly used and converted the Claimant's confidential and proprietary information and further that they improperly solicited the Claimant's clients, applicants and employees in violation of certain agreements. The Claimant further alleges that the Insureds' actions constitute tortious interference. The Claim does not arise from a "wrongful act" as defined by the [Zurich] Policy, and, as such, there is no coverage for this Claim under the [Zurich] Policy.

(ECF No. 52-7 at 4.)  On November 19, 2014, Fernandez's counsel informed Zurich that Roth added Fernandez as a defendant in the Underlying Action.  (ECF No. 52-8.)  On December 3, 2014, Zurich responded to Fernandez's letter as follows:

> Here, the Claimant alleges that…ProStaffing illicitly used and converted the Claimant's confidential and proprietary information and further that it improperly solicited the Claimant's clients, applicants and employees in violation of certain agreements. The Claimant further alleges that…ProStaffing's actions constitute tortious interference. The Claimant alleges that the Insured is an alter ego of…ProStaffing and is therefore legally responsible for its actions. However, the Claim does not arise from a "wrongful act" as defined by the [Zurich] Policy, and as such, there is no coverage for this claim under the [Zurich] Policy.

(ECF No. 52-9 at 4.)

### D. The Present Action

The second amended complaint asserts the same three claims on behalf of each of the two Plaintiffs, for a total of six counts: declaratory judgment (Counts One and Four), breach of contract (Counts Two and Five), and breach of the covenant of good faith and fair dealing (Counts Three and Six).  (ECF No. 43 at ¶¶ 30-122.)  Plaintiffs have moved for summary judgment only on the duty to defend portions of their declaratory judgment and breach of contract claims.  (ECF No. 52 at 2.)  Their motion also seeks an order directing Zurich to

reimburse Plaintiffs for expenses incurred in defending the Underlying Action. (*Id.*) Zurich has moved for summary judgment on all counts in Plaintiffs' second amended complaint.

### III. Legal Standards

#### A. Summary Judgment

"Summary judgment is appropriate only if 'the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.'" *Tolan v. Cotton,* 134 S.Ct. 1861, 1866 (2014)(quoting Fed. R. Civ. Pro. 56(a)). "In making that determination, a court must view the evidence in the light most favorable to the opposing party." *Id.* (quotation marks omitted). On summary judgment a court must "construe the facts in the light most favorable to the nonmoving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Caronia v. Phillip Morris USA, Inc.*, 715 F.3d 417, 427 (2d Cir. 2013). The moving party bears the burden of demonstrating that no genuine issue exists as to any material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–25 (1986). If the moving party carries its burden, "the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.,* 654 F.3d 347, 358 (2d Cir. 2011). Here, the parties have agreed that there are no material facts in dispute and have filed cross motions for summary judgment.

#### B. Duty to Defend

"The interpretation of an insurance policy involves a determination of the intent of the parties as expressed by the language of the policy. A contract of insurance must be viewed in its entirety, and the intent of the parties for entering it derived from the four corners of the policy[,] giving the words of the policy their natural and ordinary meaning and construing any ambiguity

in the terms in favor of the insured." *QSP, Inc. v. Aetna Cas. & Sur. Co.*, 256 Conn. 343, 351–52 (2001)(internal quotation marks, alterations, and citation omitted).[1]

The "question of whether an insurer has a duty to defend its insured is purely a question of law, which is to be determined by comparing the allegations of [the] complaint with the terms of the insurance policy." *Community Action for Greater Middlesex County, Inc. v. American Alliance Ins. Co.*, 254 Conn. 387, 395 (2000). More specifically, "[w]hether an insurer is obligated to defend an insured is determined by the facts in the underlying complaint, and not the titles assigned to the particular causes of action." *Covenant Ins. Co. v. Sloat*, 2003 WL 21299384, at *8 (Conn. Super. May 23, 2003)(internal quotation marks omitted).

"[T]he duty to defend is broader than the duty to indemnify. An insurer's duty to defend is triggered if at least one allegation of the complaint falls even possibly within the coverage. Indeed, it is well established that a liability insurer has a duty to defend its insured in a pending lawsuit if the pleadings allege a covered occurrence, even though facts outside the four corners of those pleadings indicate that the claim may be meritless or not covered. The obligation of the insurer to defend does not depend on whether the injured party will successfully maintain a cause of action against the insured but on whether he has, in his complaint, stated facts which bring the injury within the coverage... [T]he duty to defend is triggered whenever a complaint alleges facts that potentially could fall within the scope of coverage." *Travelers Cas. & Sur. Co. of Am. v. Netherlands Ins. Co.*, 312 Conn. 714, 739 (2014)(internal quotation marks, alterations, and citation omitted).

---

[1] The parties do not address whether Connecticut law governs the Zurich Policy nor have they pointed to a choice-of-law provision in the Zurich Policy. Because both parties' briefing relies on Connecticut law, however, I apply Connecticut law.

IV.  **Discussion**

    A.  **Plaintiffs' Motion for Summary Judgment**

        1.  *Duty to Defend*

            a.  The Second Amended Complaint Alleges a "Wrongful Act"

Zurich argues that it has no duty to defend because the Second Amended Complaint does not allege a "wrongful act." The Zurich Policy defines a "wrongful act" as "any actual or alleged act, error, or omission, misstatement, or misleading statement in the course of providing 'staffing services' to your clients by you or by any person for whose acts you are legally responsible." (ECF No. 50-8 at 13.) "'Staffing Services' means services provided by a staffing company to their clients including but not limited to:

> ….
>
> 3. Staffing related services provided to your clients for the recruitment, selection and placement of a person for employment with a client;
>
> 4. Temporary, contingent or contract placement services;
>
> ….
>
> 7. Services performed for a client company to supply that client company with a 'staffing services worker.'"

(*Id*. at 12.)

The Second Amended Complaint makes allegations that at least "possibly" constitute "wrongful acts" under the Zurich Policy. (*Id*.)  It alleges that Brown, while working for ProStaffing, "successfully placed at least one temporary employee with Lincoln Waste Management," which means that Lincoln Waste Management was a ProStaffing customer, in addition to being a Roth Customer (according to the allegations).  (ECF No. 50-3 at ¶ 35.) It further alleges that Brown "placed postings on job search websites…advertis[ing] manufacturing

9

and production positions and customer service positions, which Brown [was] seeking to fill for [ProStaffing] customers in the Hartford area." (*Id*. at ¶ 36.)  These allegations describe "act[s]…in the course of providing 'staffing services' to [ProStaffing] clients…by [ProStaffing] or by a person for whose acts [ProStaffing] is legally responsible."[2]  (ECF No. 50-8 at 13.)  Brown's "successful placement" – while "working on behalf of…ProStaffing" – of "at least one temporary employee with Lincoln Waste Management" and his "attempting to place other candidates with that customer" constitutes "services provided by a staffing company to [its] client[]."  More specifically, the allegations describe ProStaffing, the "staffing company," providing "services" – the "placement of a person for employment with their client" –  "to [its] client[]"– Lincoln Waste Management.  Furthermore, Brown's "attempting to place other candidates with" Lincoln Waste Management constitutes "services provided by a staffing company to…clients," specifically, "staffing related services provided to clients for the recruitment [and] selection…of a person for employment with a client."

      Zurich makes no argument that the Second Amended Complaint's allegations fall outside the scope of "staffing services."  It argues, instead, that the allegations do not describe "wrongful acts" because the alleged acts were not "*in the course of* providing staffing services…" (ECF No. 51 at 16 )(emphasis in original.)  To resolve whether the alleged acts were committed "in the course of" providing "staffing services," I look to the phrase's "natural and ordinary meaning." *QSP, Inc.*, 256 Conn. at 351–52.  "To determine the common, natural, and ordinary meaning of an undefined term [in an insurance policy], it is proper to turn to the definition found in a dictionary." *New London Cty. Mut. Ins. Co. v. Zachem*, 145 Conn. App. 160, 166 (2013).

---

[2] Zurich makes no argument that Brown and ProStaffing are not persons for whose acts Plaintiffs are legally responsible.  Zurich also does not dispute that both Plaintiffs are insureds under the Zurich Policy.

According to the dictionary, "in the course of" means "during and as part of the specified activity."[3] That definition is satisfied here: it is clear from the allegations quoted above that Brown's placement of "at least one temporary employee with Lincoln Waste Management," and his "attempt[s] to place other candidates with that customer" occurred both "during and as part of" ProStaffing's "staffing services." Indeed, a basic premise of Roth's allegations is that Brown's activities on behalf of Lincoln Waste Management took place "during" and "as part of" his employment with a competing firm.

Zurich argues for a different definition of "in the course of," one that would require a causal nexus between the injuries alleged in the Second Amended Complaint and the "staffing services" provided by ProStaffing. (ECF No. 51 at 15.) In support of its interpretation, Zurich relies on a California case: *Bank of West v. Superior Court*, 833 P.2d 545 (Cal. 1992). *Bank of West* interpreted different policy language, which was as follows:

> The company will pay on behalf of the insured sums which the insured shall become legally obligated to pay as damages because of...advertising injury to which this insurance applies. Advertising injury means injury arising out of an offense committed during the policy period occurring in the course of the named insured's advertising activities, if such injury arises out of libel, slander, defamation, violation of right of privacy, unfair competition, or infringement of copyright, title or slogan.

833 P.2d at 550 (internal quotation marks, alterations, and emphasis omitted). Construing this provision, the *Bank of the West* court held that "in the course of" required a "causal connection between [the insured's] 'advertising activities' and 'advertising injuries.'" *Id*. at 558. The court's conclusion that the policy language imposed a "causal" requirement depended not so much on the phrase "in the course of" but on the placement of "advertising activities" and

---

[3] Oxford Dictionaries, https://en.oxforddictionaries.com/definition/us/in_the_course_of (last visited March 8, 2017); *See also* The Collins English Dictionary defining "in the course of" as "during that period of time." Collins Dictionary, https://www.collinsdictionary.com/dictionary/english/in-the-course-of (last visited March 8, 2017).

11

"advertising injury" in the same sentence. *Id*. at 543.  Because the two terms appeared in the same sentence, the court had to discern the relationship between the two. *Id*. at 558 ("[W]e shall address, as an alternative, independent basis for our decision, the parties' arguments about the requisite connection between 'advertising activities' and 'advertising injury.'").  To discern that relationship, the court looked to "other types of 'advertising injury' enumerated in the policy", all of which suggested a "causal connection with advertising" and the harm suffered by the injured party.  *Id*. at 560 ("As a matter of interpretation, the context of the CGL policy strongly indicates the requirement of a casual connection….Defamation, whether libel or slander, occurs upon publication…Violation of right of privacy, in the advertising context, is virtually synonymous with unwanted publicity…Infringement of copyright, title or slogan typically occurs upon unauthorized reproduction or distribution of the protected material…Reading the term unfair competition in this context, an objectively reasonable insured would not conclude that the term unfair competition could refer to claims that bore no casual relationship to its advertising activities.")(internal quotation marks and citation omitted).  Context matters when interpreting words in a contract, and Zurich offers no convincing reasons why I should import the *Bank of the West* construction of "in the course of" in policy language covering advertising injury into the very different context at issue here.

In addition, to the extent that the phrase "in the course of" in the Zurich Policy imposes a causal requirement, it is a much less comprehensive one than that in the policy at issue in *Bank of the West*.  The term "injury" does not appear in the definition of "wrongful act," and Zurich points to no language in the Zurich Policy requiring a causal relationship between an "injury" and a "wrongful act," much less between an "injury" and "staffing services," which would be a closer analogue to the multiple causal links the *Bank of the West* court required.  *Compare Julian v.*

*Liberty Mut. Ins. Co.*, 43 Conn. App. 281, 290 (1996)("The plaintiffs overlook the provision of the insuring agreement limiting coverage even for an offense satisfying the definition of advertising injury: 'This insurance applies to ... (2) 'advertising injury' *caused* by an offense committed in the course of advertising the insured's goods, products or services. *We construe that provision to mean that a covered advertising injury would have to be causally related to an offense, such as infringement of title, that is itself causally related to the insured's advertising activities.*") (alteration omitted)(second emphasis added.)  In the Zurich Policy, the causal chain – to the extent "in the course of" implies one – extends across a narrower gap, that between the "act" and "staffing services."  And the allegations of the Second Amended Complaint easily satisfy that limited causal nexus.  The "act" of "plac[ing] at least one temporary employee with Lincoln Waste Management" was "caused" by Brown's provision of "staffing services" to Lincoln Waste Management.  Finally, even if the Zurich Policy did demand a causal relationship between "staffing services" and an "injury," that requirement would still be met here: Roth alleges that Brown's provision of staffing services to Lincoln Waste Management caused it to lose revenue it would otherwise have received from Lincoln Waste Management, and also breached the non-competition provisions of the Employment Agreement.[4]  (ECF No. 50-3 at ¶¶ 35-37.)

---

[4] Zurich's argument that the Second Amended Complaint does not describe a "wrongful act" because Roth's "injury" has "its origins in the Employment Agreement" is beside the point.  Zurich points to no language in its policy making the "origins" of an "injury" a relevant consideration.  (ECF No. 51 at 16.)  The "origins" language Zurich invokes in its brief appears to derive from *Town of Monroe v. Discover Prop. & Cas. Ins. Co.*, 2014 Conn. Super. LEXIS 956 (Conn. Super. Ct. 2014), which construed the phrase "arising out of," a phrase that does not appear in the definition of "wrongful act" in the Zurich Policy.  *See also Town of Monroe v. Discover Prop. & Cas. Ins. Co.*, 169 Conn. App. 644 (2016)(reversing trial court's holding that there had to be a "causal relationship between the accident and occurrence" under the policy and holding that there was a duty to defend in spite of the exclusion).

The other cases Zurich relies on are similarly inapposite, because none of them involved policy language close to that at issue here. (ECF No. 50-8 at 13.) Indeed, many of the cases involved policy language that either expressly required or was construed to require negligent acts or omissions – a requirement entirely absent from the Zurich Policy.[5] *See e.g.*, *Arthur J. Gallagher & Co. v. Bellay-Barnowoskus*, No. 99-cv-0588311, 2001 WL 285268, at *1 n.3 (Conn. Super. Ct. Mar. 12, 2001)("This court follows other courts which have interpreted similar language and have concluded that negligent acts, errors and omission are covered under the policy not intentional acts."); *Albert J. Schiff Assocs. Inc. v. Flack*, 51 N.Y. 2d 692, 699 (1980)("The policies, denominated professional indemnity insurance, obligated the insurer to pay for the insured's liability arising out of any error, omission or negligent act committed while in the performance of services in its professional capacity as actuary, employee benefit plan consultant and life insurance agent or broker.")(emphasis omitted); *Crum and Forster Mgrs. Corp. v. Resolution Trust Corp.*, 156 Ill.2d 384, 392 (1993)(involving professional liability policies insuring "claims…by reason of any act, error or omission in professional services rendered or that should have been rendered…arising out of the conduct of the insured's profession as a real estate agent or real estate broker" and noting "[t]hat this type of policy is similar to medical and legal malpractice insurance policies" and "is designed to insure members

---

[5] It is worth nothing that the Zurich Policy excludes "any claim, based upon or arising out of…intentional acts." (ECF No. 50-8 at 5-6.) It also provides, however, that the "exclusion does not affect [Zurich's] duty to defend in accordance with **SECTION I – INSURING AGREEMENT**, Paragraph **B. Defense and Investigation**, an insured prior to determining, through final adjudication, that the insured is responsible for a criminal, fraudulent, malicious, dishonest or intentional act, error or omission." (*Id.* at 6.) Zurich is correct that Plaintiffs cannot rely on a policy exclusion as a basis for what the policy covers. Nonetheless, when determining the meaning of any policy provision, the Court must construe the policy in its entirety. The presence of this language in the intentional act exclusion is at least an indication that Zurich understood it might be responsible under the policy to defend intentional acts.

of a particular professional group from the liability arising out of a special risk such as negligence, omissions, mistakes and errors inherent in the practice of the profession.")(internal quotation marks and citation omitted).

        b. The Second Amended Complaint is a "Claim"

Zurich also argues that the Second Amended Complaint is not a "claim" within the meaning of the Zurich Policy.

The Zurich Policy defines a "Claim" as:

1. Written demand for money resulting from a "wrongful act"; or

2. "Suit" resulting from a "wrongful act."

(ECF No. 50-8 at 11.) Zurich argues that "resulting from" means that the "wrongful act" must be the "efficient, predominant cause" or a "substantial factor," i.e., proximate cause, instead of a mere "cause in fact," of the "Suit."[6] (ECF No. 51 at 24-25.) It does not cite a single Connecticut case to support its argument that "resulting from" requires a finding that the "wrongful act" be the "efficient or predominant cause" of the Suit. And it is plain that Brown's "successful placement" of "at least one temporary employee with Lincoln Waste Management" was at least a substantial factor, i.e., a proximate cause, in the Suit. Roth included that very allegation in its Second Amended Complaint, which embodies the Suit. Contrary to Zurich's assertions, the fact that the alleged "wrongful act" also constituted a breach of the Employment Agreement with Brown (according to Roth) does not change the causal linkage between the act and the Suit; if anything, it underscores that linkage. In any event, it is plainly "possible" that the Second

---

[6] The Zurich Policy defines a "Suit" as "a civil proceeding in which 'damages' because of injury to which this insurance applies are alleged." (ECF No. 50-8 at 12.) Zurich makes no argument that the Underlying Action is not a "Suit."

15

Amended Complaint falls within the meaning of a "claim" as defined in the Zurich Policy, and that is sufficient to invoke Zurich's duty to defend.

\*\*\*

Because Plaintiffs have borne their minimal burden of showing that "at least one allegation of the complaint falls even possibly within the coverage," *Netherlands Ins. Co.*, 312 Conn. at 739, Zurich owed them a duty to defend the Underlying Action. I therefore grant summary judgment to Plaintiffs on the duty-to-defend portion of their declaratory judgment claims, Counts One and Four.

2. *Breach of Contract*

Plaintiffs seek summary judgment on the duty-to-defend portions of their two breach of contract claims – Counts Two and Five. As noted, I have found that Zurich had a duty to defend Plaintiffs in the Underlying Action. Zurich does not dispute that it did not defend the Plaintiffs in that action, and the factual recitation set forth above regarding its denial of coverage makes clear that it has refused to defend Plaintiffs in that action. Zurich has therefore breached its obligation to defend the Plaintiffs under the Zurich Policy, and I grant summary judgment to Plaintiffs on liability as to the duty-to-defend portions of Counts Two and Five.

Plaintiffs' motion for summary judgment also indicates that Plaintiffs seek an order directing Zurich to reimburse Plaintiffs for the defense costs they have incurred in the Underlying Action (ECF No. 52 at 1), but Plaintiffs have provided no evidence as to those costs with their motion. Therefore, within 7 days of this order, the parties shall confer to determine whether they can reach agreement as to the amount of Plaintiffs' defense costs in the Underlying Action. Should they reach such an agreement, they shall file a stipulation reflecting the agreed amount. Failing agreement, and because no jury demand has been filed in this case, within 21

days of this order, Plaintiffs shall submit to the Court a proposed order of costs incurred in the Underlying Action, together with affidavits and other proper evidentiary support. *See N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983)("These records should specify, for each attorney, the date, the hours expended, and the nature of the work done."). Zurich shall have 21 days to respond to Plaintiffs' submission. The parties' submissions shall indicate whether the parties believe an evidentiary hearing is necessary and whether or not the Court should, under Fed. R. Civ. P. 54(b), enter final judgment on the duty to defend after making any award of expenses. *See Avondale Indus., Inc. v. Travelers Indem. Co.*, 123 F.R.D. 80, 81 (S.D.N.Y. 1988), *aff'd*, 887 F.2d 1200 (2d Cir. 1989).

### B. Zurich's Motion for Summary Judgment

#### 1. *Duty to Indemnify*

Zurich moves for summary judgment on Plaintiffs' duty to indemnify claims, arguing that if I find Zurich has no duty to defend the Plaintiffs, I should also find that Zurich has no duty to indemnify them. I have found to the contrary. Therefore, I deny Zurich's motion for summary judgment as to the duty to indemnify.

#### 2. *Covenant of Good Faith and Fair Dealing*

Zurich moves for summary judgment on Plaintiffs' claims that Zurich breached the implied covenant of good faith and fair dealing under the Zurich Policy – Counts Three and Six. Plaintiffs have failed to respond in their opposition brief to Zurich's motion for summary judgment on those claims. Therefore, the claims are deemed to be abandoned and summary judgment is granted to Zurich as to Counts Three and Six. *See e.g.*, *Bank of Am., N.A. v. Stephanie Properties, LLC*, No. 3:14-CV-00713 MPS, 2015 WL 1445237, at *3 (D. Conn. Mar. 30, 2015)(granting summary judgment where "the Guarantors did not address Bank of America's

argument, and did not address this claim in their opposition brief"); *Marache v. Akzo Nobel Coatings, Inc.*, No. 08 CIV. 11049 SHS/AJ, 2010 WL 908467, at *15 (S.D.N.Y. Mar. 12, 2010)("[Plaintiff] failed to respond (or even mention) this claim in his opposition brief to [Defendant]'s summary judgment motion)(citing cases); *Taylor v. City of N.Y.,* 269 F.Supp.2d 68, 75 (E.D.N.Y. 2003)("Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in anyway.").

## V.     Conclusion

I grant Plaintiffs' motion for summary judgment as to the duty-to-defend portions of Counts One, Two, Four, and Five, except that damages will be determined in a later proceeding. I grant Zurich summary judgment as to Counts Three and Six.  The case proceeds as to the portions of Counts One, Two, Four, and Five concerning the duty to indemnify.  The parties shall file their joint trial memorandum within 45 days in accordance with my instructions for such a memorandum (available on the Court's website).

Should the parties wish to proceed to mediation, they shall jointly file a statement within 14 days, certifying that (1) counsel have conferred with their clients and each other, (2) the parties wish to proceed to mediation, (3) the parties are willing to participate in settlement efforts in good faith, and (4) counsel believe that a mediation stands at least a reasonable chance of resolving the case without trial.  If they file such a statement, the Court will postpone the deadline for the filing of the joint trial memorandum until 45 days after the parties' mediation.

IT IS SO ORDERED.

/s/
Michael P. Shea, U.S.D.J.

Dated:      Hartford, Connecticut
            March 8, 2017